UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
THERESA ANN MALICHEK,

                                              Plaintiff,

   -against-

COMMISSIONER OF THE
SOCIAL SECURITY ADMINISTRATION,

                                              Defendant.
------------------------------------------------------------------X

<u>For Online Publication Only</u>

**ORDER**
21-CV-00222 (JMA)

FILED
CLERK
3/8/2023 3:38 pm
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**AZRACK, United States District Judge:**

       Plaintiff Theresa Ann Malichek ("Plaintiff") seeks review and reversal of the final decision by the Commissioner of Social Security ("Commissioner" or "Defendant"), reached after a hearing before an administrative law judge, denying her application for Social Security disability and disability insurance benefits under Title II of the Social Security Act (the "Act"). Before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). (ECF Nos. 9, 10.) For the following reasons, Plaintiff's motion is DENIED, and the Commissioner's cross-motion is GRANTED.

### I.    BACKGROUND

       Plaintiff filed her application for disability insurance benefits on June 1, 2018, alleging a disability onset date of July 15, 2016 due to Parkinson's disease. (Tr.[1] 20, 98.) She was 49 years old at the time. (Tr. 29, 98.) Following the denial of her application, Plaintiff requested a hearing. (Tr. 127.) On February 21, 2020, Administrative Law Judge David Tobias (the "ALJ") conducted an administrative hearing, at which Plaintiff was represented by counsel. (Tr. 20.) An impartial vocational expert also testified at the hearing. (<u>Id.</u>)

---

[1]     Citations to "Tr." refer to the corresponding pages of the certified administrative transcript. (ECF No. 8.)

In a decision dated March 23, 2020, the ALJ denied Plaintiff's claim. (Tr. 17–34 (the "Decision").) The ALJ followed the five-step analysis pursuant to 20 C.F.R. § 404.1520. First, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date. (Tr. 23.) Second, the ALJ found that Plaintiff's Parkinson's diagnosis qualified as a severe impairment. (Id.) Third, the ALJ decided that this impairment did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 24.) Although the ALJ considered "[l]isted impairments under section 11.06 (Parkinsonian syndrome)," the ALJ determined that "the requisite criteria for the relevant listings are absent from the medical records." (Id.) Fourth, the ALJ found that Plaintiff had the residual functioning capacity ("RFC") to perform

> light work as defined in 20 CFR 404.1567(b) except she is limited to work that involves no climbing of ladders or scaffolds, no crawling, no exposure to unprotected heights and no operation of heavy machinery. She is also limited to work that involves no more than frequent use of the left arm or hand for lifting, carrying, pushing, pulling, or handling and no more than occasional use for fingering.

(Id.) As a result, the ALJ found that Plaintiff could not perform her past relevant work as a registered nurse. (Tr. 29, 222–28.) At step five, however, based on the vocational expert's testimony, and considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that Plaintiff could perform the occupations of Furniture Rental Clerk, Counter Clerk, and Ironer. (Tr. 29–30.) Accordingly, the ALJ concluded that Plaintiff was "not disabled," as defined by the Act, from July 15, 2016, through the date of the Decision. (Tr. 30.)

The Decision became final on November 20, 2020, when the Appeals Council denied Plaintiff's request for review. (Tr. 1–3.) This appeal followed.

## II.     LEGAL STANDARDS

### A.     Standard of Review

In reviewing a denial of disability benefits by the Social Security Administration, it is not the function of the Court to review the record de novo, but to determine whether the ALJ's conclusions "are supported by substantial evidence in the record as a whole, or are based on an erroneous legal standard." Schaal v. Apfel, 134 F.3d 496, 501 (2d Cir. 1998) (quoting Beauvior v. Chater, 104 F.3d 1432, 1433 (2d Cir. 1997)). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). "To determine whether the findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." Snell v. Apfel, 177 F.3d 128, 132 (2d Cir. 1999) (quoting Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1984) (per curiam)). Thus, the Court will not look at the record in "isolation but rather will view it in light of other evidence that detracts from it." State of New York ex rel. Bodnar v. Sec. of Health and Human Servs., 903 F.2d 122, 126 (2d Cir. 1990). An ALJ's decision is sufficient if it is supported by "adequate findings . . . having rational probative force." Veino v. Barnhart, 312 F.3d 578, 586 (2d Cir. 2002).

The Court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). See also Shalala v. Schaefer, 509 U.S. 292, 296–97 & n.1 (1993). The "reviewing court will order remand for further proceedings when the Commissioner failed to provide a full and fair hearing, made insufficient findings, or incorrectly applied the applicable laws and regulations." Kessler v. Comm'r of Soc. Sec., No. 17-

CV-4264, 2020 WL 1234199, at *5 (E.D.N.Y. Mar. 13, 2020) (citing Rosa v. Callahan, 168 F.3d 72, 82–83 (2d Cir. 1999)).

### B. Social Security Disability Standard

Under the Act, "disability" is defined as "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual is disabled when his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" Id. § 423(d)(2)(A).

As discussed above, the Commissioner's regulations set out a five-step sequential analysis by which an ALJ determines whether a claimant is disabled. See 20 C.F.R. §§ 404.1520, 416.920. Within this framework, a claimant will be found disabled if the Commissioner determines:

> (1) that the claimant is not working, (2) that he has a "severe impairment," (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work, the Commissioner must find his disabled if (5) there is not another type of work the claimant can do.

Burgess v. Astrue, 537 F.3d 117, 120 (2d Cir. 2008) (quoting Green-Younger v. Barnhart, 335 F.3d 99, 106 (2d Cir. 2003)). At step four, the Commissioner determines the claimant's RFC before deciding if the claimant can continue in his prior type of work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). The claimant bears the burden at the first four steps, but at step five, the Commissioner must demonstrate that "there is work in the national economy that the claimant can do." Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam).

As Plaintiff's application for disability insurance benefits was filed after March 27, 2017, her claims are governed by the current regulations concerning the consideration of medical opinions. See Darcy v. Comm'r of Soc. Sec., No. 20-CV-4769, 2023 WL 2035945, at *2 (E.D.N.Y. Feb. 16, 2023) (citing 20 C.F.R. § 404.1520c). "Under the new regulations, a treating doctor's opinion is no longer entitled to a presumption of controlling weight." Knief v. Comm'r of Soc. Sec., No. 20-CV-6242, 2021 WL 5449728, at *6 (S.D.N.Y. Nov. 22, 2021) (quotation marks omitted). ALJs no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s) including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a).

Under the current regulations, an ALJ "must evaluate the persuasiveness of all medical opinions in the record based on five factors: (1) supportability; (2) consistency; (3) the medical source's relationship with the claimant; (4) specialization; and (5) other factors that tend to support or contradict the medical opinion." Rosario v. Comm'r of Soc. Sec., No. 21-CV-1151, 2022 WL 4593069, at *5 (S.D.N.Y. Sept. 30, 2022) (citing 20 C.F.R. § 404.1520c(c)(1)-(5)). Supportability and consistency are the most important factors in evaluating a medical opinion. Id. (citing 20 C.F.R. § 404.1520c(b)(2)). For the "supportability" factor, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). For the "consistency" factor, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." Id. § 404.1520c(c)(2). "As part of his or her decision, the ALJ must explain how the factors of supportability and consistency were considered." Rosario, 2022 WL 4593069, at *5 (citing id.

5

§ 404.1520c(b)(2)). Generally, the ALJ may, but is not required to, explain how the other factors were considered. Id. § 404.1520c(b)(2); Rosario, 2022 WL 4593069, at *5.

### III. DISCUSSION

Plaintiff broadly argues that "[t]he decision of the ALJ is not based upon substantial evidence and fails to properly apply the law to the facts." (Pl.'s Mem.[2] at 10.) Defendant contends that substantial evidence supports the ALJ's decision and that the ALJ properly evaluated the opinion evidence in the record. (Def.'s Mem. at 14.) The Court agrees with Defendant.

#### A. The ALJ's RFC Determination

As set forth above, based on the evidence in the record and the hearing testimony of Plaintiff and the vocational expert, the ALJ concluded that Plaintiff had the RFC to perform

> light work as defined in 20 CFR 404.1567(b) except she is limited to work that involves no climbing of ladders or scaffolds, no crawling, no exposure to unprotected heights and no operation of heavy machinery. She is also limited to work that involves no more than frequent use of the left arm or hand for lifting, carrying, pushing, pulling, or handling and no more than occasional use for fingering.

(Tr. 24.) Plaintiff argues that "this conclusion appears to be based purely on the [ALJ]'s own assessment of the record as a whole and is not supported by any of the conclusions of the medical records in the record as a whole." (Pl.'s Mem. at 10.) Specifically, she asserts that her testimony, "together with the medical source statement of [her treating neurologist, Martin Niethammer, M.D.], and a reasonable reading of [her] past medical history, in conjunction with the belief that [she] could not use her hands for more than occasional use during a work day, clearly support the finding that [s]he would not be able to perform any return to gainful employment in the national

---

[2] "Pl.'s Mem." refers to Plaintiff's "Memorandum of Law in Support of Motion for a Judgement on the Pleadings." (ECF No. 9.) "Def.'s Mem." refers to the Commissioner's "Memorandum of Law in Support of the Defendant's Cross-Motion for Judgment on the Pleadings and in Opposition to Plaintiff's Motion for Judgment on the Pleadings." (ECF No. 10-1.)

economy." (Id. at 11.) As the ALJ explained, however, Plaintiff's position is belied by the evidence in the record, including her testimony at the hearing.

Since October 2015, Plaintiff has received treatment for Parkinson's disease, which initially manifested as a mild tremor in her left hand with gradual onset, as well as "slowing" and "heaviness" in her left hand, tightness in her left arm, and weakness.[3] (Tr. 26, 296.) At the hearing before the ALJ, Plaintiff testified that she stopped working as a nurse following her Parkinson's diagnosis. (Tr. 49–50.) She testified that her symptoms included clumsiness, dropping things, trouble manipulating objects with her hands, fatigue, and weakness. (Id.; Tr. 52.) She testified that she was "starting a little bit" to experience a tremor in her right hand in addition to the tremor in her left hand. (Tr. 50.) Although medication helped "a little bit," she explained that "there's no rhyme or reason to when the tremors start." (Tr. 51.) Plaintiff estimated that she could lift a gallon of milk with both hands. (Tr. 52.) She further testified that she "can't be on [her] feet most of the day" because of pain in her left foot, back, and hip. (Tr. 56.) She explained that she can sit for approximately 30 minutes at a time before she needs to stand due to back pain. (Tr. 57.)

As Defendant points out, however, there is significant evidence in the record that contradicts Plaintiff's subjective reports of her symptoms. During medical appointments and examinations over several years following the onset of her alleged Parkinson's symptoms, "Plaintiff often exhibited normal motor function, normal gait and balance, normal strength, normal concentration and comprehension, and normal sensation." (Def.'s Mem. at 16 (citing Tr. 302, 305, 323, 337, 383).) Indeed, notes from Plaintiff's October 2018 neurological examination conducted by consultative examiner Andrea Pollack, D.O., reflect that during the exam, Plaintiff "appear[ed] to be in no acute distress" and that her gait was "normal." (Tr. 337.) Although she exhibited

---

[3]   The Court notes that Plaintiff's medical records indicate that she is right-hand dominant. (Tr. 301.)

"slightly decreased dexterity" in her left hand, she displayed full bilateral grip strength, as well as full strength in her upper and lower extremities. (Tr. 337–38.)

Moreover, Plaintiff's medical record shows that she continued to lead an active lifestyle following the onset of her Parkinson's symptoms. For example, according to October 2015 treatment notes from Dr. Niethammer, Plaintiff reported "exercis[ing] routinely without any difficulty." (Tr. 296.) Likewise, treatment notes from July 2016 indicate that "[o]ther than the slowing with rhythmic movements [Plaintiff] is not troubled activities of daily livings [sic]," (Tr. 301), that "[s]he is already exercising frequently," (Tr. 303), and that "she is not really bothered by her symptoms." (Tr. 303.) In October 2016, Plaintiff's physician, Paul Wright, M.D., noted that Plaintiff "has been exercising routinely," was "also doing tai chi," and was "extremely pleased with her progress . . . she does not feel that she has worsened." (Tr. 284.) In May 2017, Plaintiff reported to Dr. Wright that "she has been exercising routinely," and that "she does not feel that there has been any progression." (Tr. 276.) Similarly, according to treatment notes from November 2017, Plaintiff reported that she "[d]oes all her activities on her own," and that "[e]veryday [sic] she exercises, cardio and weight training and yoga." (Tr. 310.) By May 2018, Plaintiff continued to report that she "[d]oes all her activities on her own." (Tr. 323.) Dr. Niethammer noted that her hand tremor remained "mild," and recommended that she resume exercise following a foot injury. (Tr. 324.) Dr. Niethammer included similar notes in connection with treatment visits in August 2018 (Tr. 353–54), February 2019 (Tr. 356–57), and September 2019 (Tr. 366–67). At her examination by Dr. Pollack in October 2018, Plaintiff reported that her activities of daily living included cooking, cleaning, doing laundry, shopping, going to church, exercising, yoga, and socializing with friends. (Tr. 336.) Notably, at a medical appointment with David Zaret, M.D., in November 2019, Plaintiff reported pain in her ankle, foot, and lower leg that started "while helping her mother move" in September 2019. (Tr. 379.)

Finally, at her hearing before the ALJ, Plaintiff testified that she had taken several trips after July 2016—when she alleges that she became disabled—including trips to Italy, France, Aruba, and the New Jersey Shore. (Tr. 55–56, 71–73). She also reported to Dr. Zaret that her during trip to Italy, she did "a significant amount of walking," which resulted in "intermittent swelling." (Tr. 379.)

Considering this evidence, the ALJ properly concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record," because "while the treatment records suggests some exertional limitations, including some left upper extremity exertional limitations, the evidence of record fails to establish limitations or restrictions that would preclude all vocational activities." (Tr. 25–26.)

Contrary to Plaintiff's assertion that the ALJ impermissibly "substituted his own analysis for how the plaintiff lives her life despite her limitations," (Pl.'s Mem. at 11), the ALJ was entitled to consider Plaintiff's testimony that she "performs a wide variety of activities . . . and travels on a regular basis," (Tr. 26), in determining her RFC. See Poupore, 566 F.3d at 307 ("Further, the ALJ correctly noted that [plaintiff] was able to care for his one-year-old child, including changing diapers, that he sometimes vacuumed and washed dishes, that he occasionally drove, and that he watched television, read, and used the computer."); see also Monroe v. Comm'r of Soc. Sec., 676 F. App'x 5, 8–9 (2d Cir. 2017) (affirming ALJ's reliance, in determining plaintiff's RFC, on evidence regarding plaintiff's "social activities relevant to her functional capacity—such as snowmobile trips, horseback riding, and going on multiple cruise vacations"); Burton v. Berryhill, No. 14-CV-07525, 2019 WL 1936726, at *9 (E.D.N.Y. May 1, 2019) (affirming ALJ's decision to discount plaintiff's description of the intensity, persistence and limiting effects of her symptoms due her testimony regarding "her activities of daily living and her ability to clean, wash clothes,

9

and cook"). The Court agrees with Defendant that it was proper for the ALJ "to highlight Plaintiff's activities for the limited purpose of juxtaposing her allegations of disability against contrary evidence in the record." (Def.'s Mem. at 18.) Indeed, it is well-established that subjective complaints regarding symptoms are insufficient to establish disability when contradicted by other evidence in the record. See Poupore, 566 F.3d at 307 (affirming "ALJ's finding that [plaintiff's] subjective complaints of pain were insufficient to establish disability," where medical evidence and plaintiff's own testimony about his daily activities contradicted his subjective complaints of pain). In light of this evidence, the ALJ properly discounted "her allegations of disability that would preclude all vocational activities." (Tr. 26.)

Next, Plaintiff argues that the ALJ improperly substituted his opinion for competent medical evidence and "fail[ed] to cite to any medical opinion that [was] supportive of [the RFC] finding." (Pl.'s Mem. at 12–13.) This argument is unavailing. An ALJ is "entitled to weigh all of the evidence available to make an RFC finding," as long as it is "consistent with the record as a whole." Matta v. Astrue, 508 F. App'x 53, 56 (2d Cir. 2013) (citing Richardson v. Perales, 402 U.S. 389, 399 (1971)). Accordingly, an ALJ's RFC determination "may not perfectly correspond with any of the opinions of medical sources cited." Id.; see also Cook v. Comm'r of Soc. Sec., 818 F. App'x 108, 109–10 (2d Cir. 2020) ("Although there was no medical opinion providing the specific restrictions reflected in the ALJ's RFC determination, such evidence is not required when 'the record contains sufficient evidence from which an ALJ can assess the [Plaintiff's] residual functional capacity.'") (quoting Tankisi v. Comm'r of Soc. Sec., 521 F. App'x 29, 34 (2d Cir. 2013)).

Here, the record clearly contained sufficient evidence from which the ALJ could assess Plaintiff's RFC. The ALJ stated explicitly that in formulating Plaintiff's RFC he relied on the extensive treatment records from Dr. Niethammer, the results of Plaintiff's consultative

examinations, and Plaintiff's hearing testimony. (Tr. 26–29.) This evidence, as set forth above, supports the ALJ's conclusion that while Plaintiff demonstrated "mild clinical signs" of Parkinson's disease, as well as "some exertional limitations, including some left upper extremity exertional limitations," she "fail[ed] to establish limitations or restrictions that would preclude all vocational activities." (Tr. 26.) Considering Plaintiff's treatment history, the objective medical evidence, Plaintiff's own statements and testimony, and the results of Plaintiff's consultative medical examinations, the Court concludes that the ALJ's RFC determination "was adequately supported by more than a mere scintilla of evidence." Monroe, 676 F. App'x at 8–9.

### B. The ALJ's Evaluation of Medical Opinion Evidence

Plaintiff raises three objections to the ALJ's evaluation of the medical opinion evidence, all of which are meritless.

First, Plaintiff argues that the ALJ failed to "fully address" his conclusion that Dr. Niethammer's medical opinions were unpersuasive. (Pl.'s Mem. at 11.) In doing so, she appears to ignore that the ALJ expressly stated several reasons why he found Dr. Niethammer's opinions unpersuasive, including that they were not consistent with Dr. Niethammer's own examination findings, as well as Plaintiff's statements and hearing testimony regarding her level of physical activity. (Tr. 28.) Here, the Court will "defer to the ALJ's well-supported determination" to reject Dr. Niethammer's medical opinions as "contrary to [Dr. Niethammer's] own treatment notes." Monroe, 676 F. App'x at 8 (citing Veino, 312 F.3d at 588).

Second, Plaintiff asserts that the ALJ impermissibly "broke apart the findings" of Dr. Pollack. (Pl.'s Mem. at 12.) In evaluating Dr. Pollack's medical opinion, the ALJ found that "[t]he portion of the opinion suggesting a moderate limitation in bending is not consistent with the full muscle strength displayed or any diagnostic testing or treatment records and [is] generally found unpersuasive." (Tr. 27.) In contrast, the ALJ found the remainder of Dr. Pollack's opinion

11

persuasive, as it was "consistent with the exam, wherein [Plaintiff] displayed slight dysmetria of the left upper and lower extremity with slight impairment of finger to nose testing and left heel to shine testing on the left with impaired rapid alternating movement[.]" (Tr. 27–28.) It is "within the province of the ALJ" to credit some, but not all, of a medical opinion based on the record evidence. Veino, 312 F.3d at 588. As a result, the Court agrees with Defendant that the ALJ was entitled to rely on the portion of Dr. Pollack's opinion that was consistent with the record.

Third, Plaintiff contends that "to the extent that the ALJ perceived the opinion evidence in the file as inconsistent or in conflict with the record as a whole, the ALJ had a duty and obligation to solicit additional testimony or further development of the record in that area." (Pl.'s Mem. at 14.) This misstates the ALJ's duty. As the Second Circuit has explained, "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information." Rosa, 168 F.3d at 79 n.5 (quoting Perez, 77 F.3d at 48). Plaintiff points to no "obvious gaps" in the administrative record; instead, she takes issue with the ALJ's resolution of conflicts within the record. However, "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." Veino, 312 F.3d at 588. Here, given that the ALJ had Plaintiff's treating physicians' notes and records, as well as several medical opinions, the ALJ had no obligation to seek additional information prior to determining Plaintiff's RFC. See Monroe, 676 F. App'x at 8–9 ("[B]ecause the ALJ based its RFC determination on [plaintiff's treating physician's] years' worth of treatment notes, it was not necessary for the ALJ to seek additional medical information regarding [plaintiff's] RFC.") (citing Rosa, 168 F.3d at 79 n.5); see also Pellam v. Astrue, 508 F. App'x 87, 90 (2d Cir. 2013) ("[E]ven if the ALJ did not credit all of [the consultative examiner's] findings, [the consultative examiner's] medical opinion largely supported the ALJ's assessment of [plaintiff's] residual functional capacity. Under these circumstances—especially considering that

the ALJ also had all of the treatment notes from [plaintiff's] treating physicians—we do not think that the ALJ had any further obligation to supplement the record by acquiring a medical source statement from one of the treating physicians.").

## C. The ALJ's Evaluation of the Vocational Expert's Testimony

Finally, Plaintiff lodges two objections to the ALJ's evaluation of the vocational expert's hearing testimony.

First, Plaintiff argues that "the [vocational expert] testified that most, if not all, work would be ruled out if an individual of [P]laintiff's same age and education would have the same significant limitations supported by the record that we contend," (Pl.'s Mem. at 15), which the Court understands as "only occasional use of the left upper extremity in both grasping, handling, and fingering." (Id. at 14.) This argument is meritless. Plaintiff does not dispute that "[a] valid hypothetical question need only incorporate limitations that an administrative law judge finds credible and which are supported by substantial evidence." Medovich v. Colvin, No. 13-CV-1244, 2015 WL 1310310, at *14 (N.D.N.Y. Mar. 23, 2015) (citing Pertuis v. Apfel, 152 F.3d 1006, 1007 (8th Cir. 1998)). As discussed above, the ALJ rejected Plaintiff's alleged limitations as not supported by the evidentiary record, and instead posed a hypothetical question based on his assessment of Plaintiff's RFC. (Tr. 77–78.) Accordingly, because the Court "find[s] no error in the ALJ's RFC assessment, [the Court] likewise conclude[s] that the ALJ did not err in posing a hypothetical question to the vocational expert that was based on that assessment." Salmini v. Comm'r of Soc. Sec., 371 F. App'x 109, 114 (2d Cir. 2010) (citing Dumas v. Schweiker, 712 F.2d 1545, 1553–54 (2d Cir. 1983)).

Second, Plaintiff asserts that the Commissioner failed to demonstrate that "there is work in the national economy that [Plaintiff] can do." Poupore, 566 F.3d 306. Specifically, she contends that "the ALJ instead missed the entire point of the expert's testimony inasmuch as the [vocational

13

expert] testified that under the hypothetical scenario presented as the RFC (and which the ALJ ultimately adopted), essentially an extremely limited to basically no work [sic] exists nationally." (Pl.'s Mem. at 15.) She thus appears to attack the ALJ's determination that the jobs identified by the vocational expert "exist[] in significant numbers[.]" 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1566(b).

Neither the Act nor applicable regulations define "significant numbers." And the Second Circuit has not "set any bright line rule regarding the number of jobs needed to satisfy the Commissioner's burden at step five." Maldonado v. Comm'r of Soc. Sec., No. 21-CV-7594, 2023 WL 243617, at *10 (S.D.N.Y. Jan. 18, 2023). Nevertheless, district courts within this Circuit "'have generally found that what constitutes a "significant" number is fairly minimal.'" Id. (finding that Commissioner satisfied burden by showing 12,241 positions were available) (quoting Rodriguez v. Astrue, No. 11-CV-6977, 2013 WL 3753411, at *3 (S.D.N.Y. July 17, 2013) (12,000 jobs nationwide was "significant")).

As discussed above, the vocational expert identified, and the ALJ accepted, the following jobs as consistent with Plaintiff's RFC: Furniture Rental Clerk (DOT 295.357-018), with 60,382 positions nationally; Counter Clerk (DOT 249.366-010), with 1,760 positions nationally; and Ironer (DOT 590.685-042), with 4,961 positions nationally. (Tr. 30.) In response, Plaintiff argues that the ALJ's decision to rely on the vocational expert's testimony "simply cannot be a reasonable assessment of the practicality of re-employment in the national economy with her limitations." (Pl.'s Mem. at 15.) Beyond this conclusory objection, however, Plaintiff advances no basis for the Court to find that none of these jobs "exists in significant numbers." Because the vocational expert "testified to the existence of such jobs at the national and regional level . . . [t]he ALJ was entitled to credit that testimony, and [the Court] will not disturb that finding based upon [Plaintiff]'s conclusory proclamations to the contrary." Bavaro v. Astrue, 413 F. App'x 382, 384 (2d Cir. 2011)

(internal citation omitted). Accordingly, the Court concludes that the ALJ's determination at step five satisfied the Commissioner's burden of showing that relevant jobs—accounting for Plaintiff's RFC—exist in significant numbers nationally.

## IV.   CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiff's motion for judgment on the pleadings and GRANTS the Commissioner's cross-motion. The Clerk of Court is respectfully directed to enter judgment accordingly and to close this case.

**SO ORDERED.**

Dated: March 8, 2023
Central Islip, New York

                                                             /s/   (JMA)
                                      JOAN M. AZRACK
                                      UNITED STATES DISTRICT JUDGE